## ·McCARTY *et al. v.* LEHIGH VAL. R. Co.

*(Circuit Court, E. D. Pennsylvania.* June 20, 1890.)

1. PATENTS FOR INVENTION—INFRINGEMENT—CAR-TRUCK BOLSTERS.
   Metallic car-truck bolsters had been made, consisting of a straight lower bar and an arched upper bar, secured at the ends to the ends of the lower bar, and rigidly secured to the car-truck. Solid bolsters had been placed upon springs in the car-truck to secure a "floating" motion of the bolster, and were held in their place by guides permitting an up and down motion. *Held* no invention involved in adding to the rigid bolsters lower-bar flanges to secure the ends of the upper bar, and guide-plates to place wedge-shaped pieces between the bars, and to place this construction upon springs in the same manner as the solid bolster had formerly been placed.

2. SAME—EQUIVALENTS.
   A lower bar of a car bolster, having its ends turned up and laid back to support the upper bar, is an equivalent of a flange attached to the lower bar for the same purpose.

3. SAME—INVENTION—TRUSS-RODS BETWEEN BARS.
   Truss-rods between the bars of a metallic bolster are not invention, and had been moreover used in the Roberts bolster.

Bill in Equity by Harry C. McCarty and John F. Bickel to enjoin the infringement of patents 339,913 and 314,459, against the Lehigh Valley Railroad Company. No. 339,913, which was first applied for, contained truss-rods as an element of the combination, which were not contained in the other.

*Jerome Carty,* for complainants.

*Andrew McCollum,* for defendant.

BUTLER, J. The two patents in suit are for substantially the same combination, except that the last applied for (though first issued) omits the "truss-rods" described in the first application. While both are, in terms, for an "improvement in car-trucks," they are actually for an improvement in "truck bolsters" only. The improvement consists in forming a bolster of an upper and lower metal bar; the latter being straight and a little longer than the former, with the excess of length turned up, or "flanged," at the ends, to form a support for the other; the upper being arched from near the ends, which are straight, and rested against the "flanges," on the lower. The bars are secured in position by central upright columns, short intermediate wedge-shaped blocks, inserted near the ends, and by bolts where the ends unite. Under the ends of the lower bar "guide-plates" are fastened, to keep them in place over the springs, on which they rest. This relation to the springs imparts. to the bolster a swinging, or "floating,"'motion on the truck. In the first application, (and the patent issued thereunder,) "truss-rods" are, also, called for. The defense assails the patent, (for lack of invention,) and also denies infringement.

The history of the art shows that "body bolsters" (so termed in contradistinction to truck bolsters) in form and general structure, similar to the complainants' bolster, had long been in use, and adapted and applied

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

to trucks, before the complainant's alleged invention. The "Naugatuck truck bolster" is of this description; and differs from the complainants' only in the absence of "flanges" on the lower bar,[1] the wedge-shaped blocks, and the "guide-plates." It was fastened rigidly upon the truck; the springs being placed over the journal bearings, imparting a swinging motion to the carriage on which the sides of the bolster rest. This history further shows that bolsters composed of single, heavy straight bars or beams, with the ends resting on springs (so as to allow them to swing,) and kept in place over the springs by guides, had long been used. Such were the "Diamond bolsters."

It is thus seen that what the complainant did was to transfer the "Naugatuck bolster" from its rigid situation to that of the "Diamond," and add flanges[1] and guide-plates to the lower bar, and the intermediate wedge-shaped blocks. Did this require invention? What constitutes invention, within the meaning of the patent laws, as has been said in *Duster Co.* v. *Levy, ante,* 381, (decided by this court at the present term,) has been so fully and completely discussed in the numerous cases in which the question has arisen, that further elaboration would be waste of time. Two-thirds, probably, of all suits brought to enforce patents, have involved it, and more time has been employed in its elucidation than has been expended on any other question of patent law. As remarked by the supreme court in *Hollister* v. *Manufacturing Co.,* 113 U. S. 59, 5 Sup. Ct. Rep. 717, a device which displays only the expected skill of the maker's calling, and involves only the exercise of the ordinary faculties of reasoning, upon materials supplied by special knowledge, and facility of manipulation resulting from habitual intelligent practice, is in no sense a creative work of inventive faculty, and such as the constitution and the patent laws aim to encourage and reward. It is something, as the court further says, (at page 72,) which springs from an "intuitive faculty of the mind, put forth in the search for new results, or new methods, creating what had not before existed or bringing to light what lay hidden from vision." In other words, it is a new thing produced by the exercise of the inventive or creative faculty, and not by the employment, simply, of common reason, applied to existing and known facts. In *Hollister* v. *Manufacturing Co.,* the improvement involved exhibited great ingenuity, and was of much value, and yet the court held it to be without patentable novelty.

In this view of the law, does the complainants' improvement show invention? Surely the transfer of the "Naugatuck truck" to the situation of the "Diamond," did not require invention. The advantages of resting the bolster on springs had previously been discovered, and the method of doing it successfully been applied. All else the complainant did was to add the "flanges," the "guide-plates," and the wedge-shaped blocks. I am unable to see any especial advantage arising from the latter; addi-

[1] I also find, on closer inspection of the "Naugatuck" bolster exhibit, the equivalent, I think, of complainant's "flanges." The ends of the lower bar are turned up and laid back, so as to meet and support the ends of the upper, serving the same purpose as the "flanges." The latter must therefore be regarded as old.

tional columns or posts, or thickening the bar ends, would seem to answer the same purpose; and, besides, the respondent does not use them. The "guide-plates" do not materially differ from the old guides, nor serve any new purpose. They are intended to keep the ends in place over the springs. The suggestion that they afford support to the upper bar is without force. If such additional support were needed, it could as well be obtained by increasing the thickness of the ends of the lower bar, or adding an additional short bar or plate thereto; and, besides, some of the old guides measurably afford similar support. The flanges[1] are useful, as they serve to reinforce the bolts, and thus aid in maintaining the adjustment of the bar ends. But flanges are a very old and common device, and have long been applied to analogous uses. I think any mechanic of ordinary skill in such work, directed to reinforce the bolts, and add further security to the end adjustment, would do it as the patentee did, or by means of a simple box, (the plain equivalent of what he used,) as Mr. Montz, a rival patentee, did. Such would be the most obvious method of accomplishing it.

The truss-rods described in the earlier application, (but no longer employed,) are also old devices, and were in common use for similar structures long before the patentee employed them. If not previously used in bolsters,[2] their application to that purpose would not require invention. Such new use would clearly be analogous to the old. And, moreover, they are admitted to be immaterial by the abandonment of their use. With a predisposition to sustain the patent, because of the presumption arising from its grant, and because the patentee's work has some merit, I find myself unable to do so. Whether the parts of the bolster be considered separately or in combination, I cannot find patentable novelty in what the patentee did.

The doctrine of estoppel, to which complainant appeals, on account of Mr. Montz's application for a patent covering substantially the same combination, and the proceedings under it, does not apply. Without considering whether it would apply to Montz, it is sufficient to say that the respondent is not Montz, and is not bound by his acts. The circumstance that he was in its employment at the time is unimportant. He was not employed to represent it in the patent office. His application there, and all he did respecting it, were on his own account. A decree may be prepared accordingly.

---

[1] See foot-note on preceding page.

[2] On re-examination of the exhibits since the foregoing opinion was written, I find further that "truss-rods" are shown on the old Roberts bolster; and in Mr. McCarty's testimony, at page 26, he says he does not claim infringement of these rods.